IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| STARLINK LOGISTICS INC., | ) | |
| | ) | |
| Plaintiff, | ) | NO. 1:18-cv-00029 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| ACC, LLC and SMELTER SERVICE | ) | |
| CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the Court is "Plaintiff's Motion for Reconsideration" (Doc. No. 147, "Motion for Reconsideration"), which is supported by a memorandum in support thereof (Doc. No. 148, "Memorandum in Support"). Defendant ACC, LLC ("ACC") filed a response in opposition (Doc. No. 154) to the Motion for Reconsideration.

The Motion for Reconsideration is directed at this Court's Order (Doc. No. 142, "Order") and accompanying memorandum opinion (Doc. No. 141, "Opinion"), which granted in part and denied in part ACC's Motion for Summary Judgment (Doc. No. 100) as follows:

> The Court **GRANTS** Defendant's Motion with respect to Plaintiff's 25 claims under the Clean Water Act (asserted in the complaint in this case), on Plaintiff's CERCLA cost-recovery claim (originally asserted in M.D. Tenn. Case No. 1:12-cv-00011), and on the negligence claim and nuisance claim originally asserted in M.D. Tenn. Case No. 1:12-cv-00011 [hereinafter, "Prior Case"]. The Court **DENIES** Defendant's Motion as to all other claims, *i.e.*, all state-law claims asserted either in this case or in the amended complaint in the Prior Case except for the above-referenced negligence claim and nuisance claim.

(Doc. No. 142).

Via the Motion for Reconsideration, Plaintiff asserts that the Court committed one mistake after another in the parts of its Opinion wherein it granted ACC summary judgment on various

claims of Plaintiff. Correctly implying that Rule 54(b) of the Federal Rules of Civil Procedure applies to the Order because the Order is interlocutory rather than final and appealable, Plaintiff asks the Court to reconsider its Order "to correct [clear] errors and prevent manifest injustice." (Doc. No. 148 at 2-3).

> As a district court in this circuit cogently explained:

>> Under Federal Rule of Civil Procedure 54(b), a court may revise any order before it issues an entry of judgment adjudicating all of the claims and all of the parties' rights and liabilities. Fed. R. Civ. P. 54(b). "Rule 54(b), however, does not expressly provide for ... motions by parties and does not prescribe any standards or bases for revisions of prior decisions." Lumpkin v. Farmers Grp., Inc., No. 05–2868 Ma/V, 2007 WL 6996777, at *3 (W.D. Tenn. July 6, 2007) (citation and internal quotation marks omitted).

*Ashraf v. Adventist Health Sys./Sun-belt, Inc.*, No. 2:17-CV-2839-SHM-DKV, 2018 WL 4431381, at *2 (W.D. Tenn. Sept. 17, 2018). Plaintiff correctly sets forth the standard that courts (including this one) have adopted:

> [A] motion to reconsider may be granted if there is:

>> (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. Such motions are entrusted to the Court's sound discretion [and] is not an opportunity to re-argue a case and should not be used to re-litigate previously considered issues, to submit evidence which could have been previously submitted in the exercise of reasonable diligence, or to attempt to obtain a reversal of a judgment by offering the same arguments previously presented.

(Doc. No. 148 at 2-3) (citing *Chapman-Robbins v. Tenn. Dep't of Transp.*, No. 3:19-cv-01128, 2021 WL 3136267, at *1 (M.D. Tenn. 2021)). As suggested above, Plaintiff relies on the first and fourth of these grounds variously to support its respective requests on several points. But in so doing, it faces the daunting reality that, as one district court in this circuit noted in the context of a motion for reconsideration under Rule 59(e), "[i]n essence, a judgment must be "dead wrong" to qualify as being clearly erroneous." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 809

(N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010) (quoting *H & A Land Corp. v. City of Kennedale,* No. 04:02–458, 2005 U.S. Dist. LEXIS 25797, *5 (N.D. Tex. Oct. 24, 2005)). It stands to reason that the best way to show that the court was dead wrong is to provide a "zinger" or "gotcha" revelation—where, for example, the movant points out indisputably that the court materially misread the record, overlooked or plainly misapplied the controlling caselaw, or engaged in manifestly illogical reasoning. To the extent that the movant fails to provide something like this, the movant tends to show not clear error but rather, at best, arguable error. And so it is in this case, as discussed below.

Plaintiff begins the argument in its Memorandum in Support by stating, "[p]eeling away a decade of procedural complexity, this case is simple." (Doc. No. 148 at 3). Setting aside whether Plaintiff's point is that any simpleton would have figured out that ACC's Motion for Summary Judgment should be denied in full, the undersigned is at a complete loss as to how Plaintiff could say that this case is "simple." The existence of such simplicity comes as news to the undersigned, who perceives the case as complex in numerous respects even once "procedural" complexity is "peel[ed] away." If the case was so "simple" in its non-procedural (i.e., substantive) aspects, then the Court must ask why Plaintiff submitted with ACC a joint motion for an extension of page limits for summary judgment briefing (Doc. No. 87) that fairly oozes representations of this case's complexity. Explaining the need for an extension, Plaintiff (together with ACC) stated in pertinent part as follows:

> The *claims and defenses asserted in this consolidated case involve complex issues of federal and state environmental laws, and the facts underlying such claims and defenses have occurred over several decades. The evidence adduced in this case during discovery is voluminous.* For example, to date, ACC has produced nearly 26,000 pages of documents and tangible things, and received tens of thousands of pages of additional documents from the Plaintiff and third parties, including the Tennessee Department of Environment and Conservation (TDEC). The Parties therefore submit that an enlargement of the page limits for briefs,

> memoranda of law, as well as optional replies, is appropriate and will not unduly prejudice the Parties or delay the determination of the dispositive motions. The Parties submit that an enlargement of the page limit for such briefs and memoranda of law not to exceed fifty (50) pages and replies not to exceed fifteen (15) pages is reasonable and appropriate under the circumstances.

(Doc. No. 87 at 2) (emphasis added). The parties made good on their suggestion. Defendant filed a fifteen-paragraph motion for summary judgment (Doc. No. 100), supported by a fifty-page brief (Doc. No. 101) and statement of material facts comprising 62 paragraphs (Doc. No. 102), as well as an additional filing (a "Notice" with attachments) of 207 pages and then a fifteen-page reply (Doc. No. 125). For its part, Plaintiff filed a fifty-page brief in opposition to ACC's motion for summary judgment (Doc. No. 116, "Opposition to ACC's MSJ"), supported by more than 600 pages of exhibits thereto, followed by another filing (Doc. No. 117) containing well over 600 pages of additional material in support of its Opposition to ACC's MSJ, followed by yet another filing (Doc. No. 118) comprising almost 70 additional pages of such support, followed by a twenty-eight-page response (Do. No. 119) to ACC's statement of material facts, followed by two declarations (Doc. No. 120, 121) that (together with their attachments) comprised 27 pages. And then there is the fact that Plaintiff asserted 27 different claims. Surely the Court can be forgiven for not seeing the "simpl[icity]" in all of this.

Given that Plaintiff filed nearly 1500 pages in opposition to ACC's motion for summary judgment, the Court is disinclined to hear Plaintiff's protestations that this case is "simple." The Court is likewise disinclined to accept any possible suggestion that the undersigned should be able to understand the case better than he has and (based on the supposedly proper understanding) deny ACC's motion for summary judgment in full.[1] The Court's purpose here is not to complain about

---

[1] The Court suspects that Plaintiff's rejoinder to this would be along the lines that Plaintiff meant only that the case was "simple" in its broad strokes and major themes. Any such response would be to miss the mark completely. In addressing ACC's motion for summary judgment, the Court was having to deal with

any possible insinuation that it was not up to the task of deciding a dispositive motion in a "simple" case correctly (meaning, in Plaintiff's worldview, entirely in favor of Plaintiff). The Court's point is that in the aftermath of a court order resolving a dispositive motion in a case with issues so "complex" (*Plaintiff's* word, not the Court's word), a party aggrieved by that order may well have trouble convincing the court that things (in particular, the alleged error of the court's ways and the manifest injustice inflicted by the court's order) suddenly have become so simple (and clear). And so it is in this case.

With that overarching point having been made, the Court turns to each of Plaintiff's arguments in turn.

I.    *The Court's alleged error in finding that the concurrent-remedies doctrine is applicable.*

Plaintiff asserts that the Court clearly erred[2] in finding that the concurrent-remedies doctrine (a/k/a/ concurrent-remedy doctrine) applies here and thus bars, with respect to Plaintiff's

---

considerable factual and legal minutiae, and not mere broad concepts. Likewise besides the point would be any observation that the Court's crafting of the Opinion did not require a perusal of every page of the nearly two thousand pages presented to the Court in connection with ACC's motion for summary judgment; any way one slices it, there was a great deal of material to account for in crafting the Opinion.

[2] Below, references to the Court purportedly committing clear error in some context generally should be taken to encompass also the notion that the Court purportedly created a manifest injustice in that context. This is particularly appropriate given that the two concepts do not seem materially distinguishable, given that "manifest injustice" seems to harken back to something very close to "clear error":

"'[M]anifest injustice' . . . [is] . . . defined as '[a]n error in the trial court that is direct, obvious, and observable[,]'" Tennessee Protection & Advocacy, Inc. v. Wells, 371 F.3d 342, 348 (6th Cir. 2004), "apparent to the point of being indisputable," Block v. Meharry Med. Coll., No. 3:15cv-00204, 2017 WL 1364717 * 1 (M.D. Tenn. Apr. 14, 2017) (citation omitted). "[F]or a court to reconsider a decision due to 'manifest injustice,' the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it." Block, 2017 WL 1364717 * 1 (citation omitted). The Sixth Circuit has advised that "manifest injustice" is not meant to allow a disappointed litigant to "correct what has -- in hindsight -- turned out to be a poor strategic decision . . . ." Gencorp., Inc. v. Am. Int'l Underwriters, 178 F. 3d 804, 834 (6th Cir. 1999).

claims under the Clean Water Act ("CWA"), Plaintiff's requested equitable remedies to the same extent that Plaintiff's requested legal remedies (civil penalties) are barred by the applicable statute of limitations (i.e., 28 U.S.C. § 2462).

Plaintiff first argues that the Court should have granted it an opportunity to respond to ACC's concurrent-remedies doctrine argument because ACC advanced the concurrent-remedies doctrine as a new reason for summary judgment in ACC's reply brief. To the extent that Plaintiff asserts clear error in the Court not allowing this opportunity, Plaintiff has failed to show such clear error; Plaintiff never requested that the Court grant it such an opportunity, and Plaintiff fails to show why it is *clear error* (even if it arguably is "error") not to grant such an opportunity where it is not requested via, for example, a request to file a sur-reply.

To the extent that Plaintiff alternatively asserts clear error in the Court even considering the concurrent-remedies doctrine in the first place, Plaintiff fails to set forth the applicable standard(s) for when something raised in a reply brief can and cannot be considered, let alone explain why the concurrent-remedies doctrine could not be considered for one or both of two reasons ACC suggests: (a) that the argument based on the concurrent-remedies doctrine was not truly new when raised by ACC in the reply brief, because it is merely a part of the ACC's comprehensive statute-of-limitations defense that was raised in its motion for summary judgment; and (b) even if deemed newly raised in ACC's reply brief, the concurrent-remedies doctrine was properly invoked by ACC in reply to things said in Plaintiff's Opposition to ACC's MSJ. (Doc. No. 154 at 12-14). Even assuming arguendo that these were somewhat shaky reasons for the Court to consider the concurrent-remedies doctrine, that would not necessarily make such consideration

---

*Ashraf*, 2018 WL 4431381, at *3. Having said that, the Court notes that herein it does respond specifically to Plaintiff's most explicit invocation of the manifest-injustice grounds for reconsideration.

erroneous, let alone clearly erroneous. As to the second option above, the lack of clearness in any purported error is highlighted by the fact that the Court has wide discretion in deciding whether to consider an argument newly raised in a reply brief. *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1202 (9th Cir. 2011) (noting that a district court has discretion to consider, or not consider, arguments raised only in reply); *Ruggiero v. Warner–Lambert Co.,* 424 F.3d 249, 252 (2d Cir. 2005) (noting that the district court has discretion to consider arguments first raised in reply papers); *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.,* 215 F.3d 219, 226 (2d Cir. 2000) (reviewing for abuse of discretion the district court's decision to consider evidence first submitted with the movant's reply papers).

This rule is sound because it prevents precisely the kind of thing that happened here and is likely to drive a busy district court somewhat bananas: a disappointed party raising (here, *only after-the-fact*, no less) and pursuing an argument over whether an opposing party that prevailed on a motion newly raised a winning argument only in reply and, if so, whether the winning argument nevertheless should have been considered. Courts typically have too many issues to resolve to wade into that kind of argument, and particularly where (as here) the disappointed litigant did not raise the alleged tardiness prior to the court's decision, the court naturally will be particularly disinclined to find that the mere consideration of the winning argument was an abuse of discretion.

On a more substantive note, Plaintiff argues that the Court (in a move that Plaintiff presumably contends could have been avoided had it only been heard in advance of the Court's ruling) clearly erred in finding the concurrent-remedies doctrine applicable to its CWA claims. Plaintiff first claims that the Court clearly erred in finding that Plaintiff conceded that its claims for civil penalties were barred by the applicable five-years statute (namely, 28 U.S.C. § 2462). The Court disagrees. Plaintiff was all but inviting the Court to make just this kind of finding when

Plaintiff wrote the following in its Opposition to ACC's MSJ (referring to itself as "SLLI" and to the instant case as "SLLI II"):

> ACC incorrectly argues that the CWA Claims in SLLI II are barred by a 5-year statute of limitations provided in 28 U.S.C. § 2462. However, this statute provides that "an action, suit or proceeding for the enforcement of any civil *fine, penalty, or forfeiture, pecuniary or otherwise*, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . ." *The SLLI II Complaint contains nine specific prayers for relief, eight of which are injunctive, and one, ¶ (e), which asks the Court to impose civil penalties on ACC* (which under law, if imposed, are payable to the United States Treasury, not to SLLI). The cases ACC cites do not support its argument that "this case is well outside the relevant statute of limitations." Rather, these cases merely hold that the CWA has a five-year statute of limitations for penalties. *There is no statute of limitations for SLLI's request for injunctive relief that ACC comply with the CGP.*

(Doc. No. 116 at 14) (footnotes omitted) (second and third emphases added). And to support the latter statement, Plaintiff appended a footnote that quoted one case as saying, "[b]ased on the considerations addressed above, and in light of the traditional notions statute of limitations should be strictly construed in favor of the Government, we do not consider the Government's request for injunctive relief as an action for a 'civil penalty' barred by § 2462," *United States v. Telluride Co.*, 146 F.3d 1241, 1248 (10th Cir. 1998), and another case as saying, "[t]he plain language of section 2462 does not apply to equitable remedies." *United States v. Banks*, 115 F.3d 916, 919 (11th Cir. 1997). Plaintiff was giving every indication that its point here was merely that Section 2462 generally does not apply to requests for *injunctive relief*—without the additional assertion that Section 2462 as applied specifically in the present case did not result in a time-bar of Plaintiff's claims for *civil penalties* under the CWA.

Then there is the following statement by Plaintiff: "SLLI's CWA claims and its prayer for injunctive relief are not subject to a five-year statute of limitations, as argued by ACC." (Doc. No. 116 at 15). At first blush, this statement appears to encompass all of Plaintiff's "CWA claims," including claims for civil penalties, and not just Plaintiff's request for injunctive relief. But on

second glance, that construction of the statement does not hold up. By its very terms, the statement encompasses only claims that "are not subject to a five-year statute of limitations," and claims for penalties under the CWA undisputedly *are subject to* a five-year statute of limitations," irrespective of whether the particular five-year statute of limitations to which such claims are subject in fact applies to time-bar such claims in a particular case. So the statement is best construed as an assertion only that Plaintiff's requests for injunctive relief are not subject to any five-year statute of limitations, and not as an assertion that Plaintiff's claims for civil penalties are not barred by the five-year statute of limitations at 28 U.S.C. § 2462.

Insisting that it did contest that its claims for penalties under the CWA were time-barred by 28 U.S.C. § 2462, Plaintiff writes that it "asserted that all three cases ACC cited hold that CWA civil penalties are available for violations that occurred within five years of filing the Complaint." (Doc. No. 148 at 6 (quoting Doc. No. 125 at 14 n.50). Setting aside that Plaintiff here miscited Doc. No. 125 when it should have cited Doc. No. 116, the citation is misleading because the cited footnote simply does not make the assertion that Plaintiff claims it makes—and it likewise was not cited by Plaintiff as support for any such assertion, as the text to which it is attached makes no such assertion and instead asserts (uncontroversially) only that the CWA has a five-year limitations period for penalties. Rather, the text of the footnote (which includes no assertions whatsoever made independently by Plaintiff) does no more than includes parenthetical descriptions of three cases, each of happens to be *merely consistent with the notion* (without specifically asserting) that civil penalties are available for violations that occurred within five years of filing the Complaint.

Even if such an assertion had been made in Plaintiff's Opposition to ACC's MSJ, it would be meaningless (untethered to anything consequential) unless Plaintiff additionally asserted in Plaintiff's Opposition to ACC's MSJ that CWA violations by ACC are properly deemed to have

occurred within five years of the filing of the Complaint. And yet in this part of Plaintiff's Opposition to ACC's MSJ, Plaintiff simply does not make the latter assertion just as it did not make the former assertion.

In short, the Court cannot be blamed for not perceiving that Plaintiff was intending to argue that Plaintiff's claims for civil penalties are not barred by the five-year statute of limitations at 28 U.S.C. § 2462. And even if it could be said that the Court on balance *should* have perceived such a thing, the Court did not *clearly err* by not doing so. So it did not clearly err by treating Plaintiff as conceding that, as applied in the instant case, Section 2462 operated to time-bar Plaintiff's claims for penalties under the CWA.

For this reason, the Court need not now consider Plaintiff's (belated) argument that Section 2462 actually did not operate to time-bar Plaintiff's claims for penalties under the CWA (and thus cannot and did not trigger the concurrent-remedies doctrine so as to also bar Plaintiff's claims for equitable relief under the CWA). As for that argument, it appears nowhere in Plaintiff's Opposition to ACC's MSJ. The argument is to the effect that Plaintiff actually can seek civil penalties, notwithstanding the five-year limitations period of Section 2462, because supposedly its "CWA claims allege ongoing violations of the terms of the 2011 and 2016 [Construction General Permits]." (Doc. No. 148 at 7). But Plaintiff's Opposition to ACC's MSJ nowhere refers to the notion of "ongoing violations," let alone to "ongoing violations" being a specific basis for avoiding the time-bar of Section 2462.[3] So the Court declines to consider that argument now.

---

[3] Plaintiff's Opposition to ACC's MSJ uses the term "ongoing" seven times, but only once specifically to allege "ongoing violations" of law and never once to allege "ongoing" violations of the CWA in particular. Relatedly, Plaintiff's Opposition to ACC's MSJ uses the term "continuing" only once (in the Introduction, to make a general claim of "ongoing additional damage continuing unabated), (Doc. No. 116 at 1), and it does not use the term "continuing violation" at all.

In summary, the Court did not commit clear error in finding that Plaintiff conceded that Section 2462 time-barred its claims for civil penalties under the CWA, and it need not entertain Plaintiff's new argument that contradicts such concession.

## II. *The Court's alleged error in granting ACC summary judgment on Plaintiff's CERCLA cost-recovery claim.*

In its Order, the Court granted summary judgment to Defendant on Plaintiff's cost-recovery claim under CERCLA. In its Opinion, the Court noted that such a claim (one contrasted with a claim for *contribution* under CERCLA) cannot be sustained if Plaintiff had obtained an "administrative settlement" with the State of Tennessee with respect to the contaminated site at issue. (Doc. No. 141 at 19) (quoting *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 768 (6th Cir. 2014)). The Court then held that Plaintiff had indeed obtained such an administrative settlement via its agreement with the State ("VOAP agreement") under Tennessee's Voluntary Oversight and Assistance Program (VOAP), thus dooming Plaintiff's CERCLA cost-recovery claim. Plaintiff contends that the Court's decision was in error for five different reasons, each of which the Court will address in turn.

First, Plaintiff asserts that "the decision relies heavily upon a conclusory assertion by ACC that was devoid of supporting argument and therefore waived, and thus never triggered an obligation by SLLI to respond." (Doc. No. 148 at 9). Plaintiff describes the conclusory assertion to which it is referring as "ACC['s] single-sentence assertion that SLLI's VOAP agreement triggered SLLI's obligation to file a contribution claim under CERCLA, rather than a cost-recovery claim, citing nothing but the *Hobart* decision for support." (*Id.* at 11). Plaintiff then notes that the Court itself was underwhelmed by ACC's argument insofar as ACC omitted any analysis of the kind of "settlement" that precludes a CERCLA cost-recovery action. (*Id.*). Plaintiff claims that it was "not obligated to respond to such a perfunctory and undeveloped argument because ACC

waived it by failing to provide any factual or legal analysis for support. And because the Court conducted the Hobart analysis *sua sponte* in the absence of requesting supplemental briefing, SLLI was improperly denied an opportunity to argue this issue." (*Id.*). The Court cannot agree that Plaintiff was "denied an opportunity" to respond to ACC's *Hobart*-based argument; instead, Plaintiff *chose* not to respond, purportedly due to its belief that "it was not obligated to respond to [this argument]" because (according to Plaintiff) it was waived by ACC due to its "perfunctory and undeveloped" nature. But Plaintiff was taking its chances in deciding that the argument was waived; this decision was perilous.[4] The particular assertion on which Plaintiff focuses (that Plaintiff's VOAP precluded a cost-recovery claim) may have been a single sentence, but the argument that a cost-recovery claim was precluded based on *Hobart* certainly spanned more than a sentence. Plaintiff provides no real analysis of why the Court could not properly exercise its discretion to consider this argument on the grounds that it *was* raised, even if only in a skeletal way. As best, Plaintiff establishes only that the Court could (or on balance *should*) have deemed the argument waived by ACC due to its skeletal nature. Plaintiff does *not* establish that it was legal error (specifically, an abuse of discretion), let alone *clear* legal error, to address the argument on the merits (based, it is true, largely on the Court's own work rather than ACC's work) instead of deeming it waived.

Second, Plaintiff argues that "in applying the ruling in *Hobart sua sponte*, the Court misconstrued language in SLLI's VOAP agreement that makes clear that document did not settle

---

[4] The undersigned is of the firm view, based on a couple of decades of litigation experience prior to taking the bench, that it was nowhere near safe for a litigant to deem ACC's *Hobart*-based argument waived—especially where, as here, Plaintiff did not explain at the time why it was appropriate to treat the argument as waived. If Plaintiff decided to treat the argument as waived, that is its choice, and the Court does not presume to second-guess it. But Plaintiff must live with the consequences of that choice, and the key consequence here is that the Court exercised its discretion to consider the argument because it undeniably was raised, albeit not in a fulsome way.

any potential CERCLA liability." (Doc. No. 148 at 9). More specifically, Plaintiff argues that the VOAP agreement could not have been (and was not) an administrative settlement with respect to Plaintiff's liability for the pollution of Arrow Lake, because (according to Plaintiff), Plaintiff had no liability for the pollution of Arrow Lake to begin with; according to Plaintiff, the (purported) absence of any such liability results from CERCLA exempting a property owner like Plaintiff from any liability for pollution on Plaintiff's property (such as pollution fo Arrow Lake) caused by third-party polluters. (*Id.* at 11) (citing 42 U.S.C. § 9607(b)(3)). Plaintiff's suggestion is that it never even *potentially* had liability for the pollution of Arrow Lake, because 42 U.S.C. § 9607(b)(3) exempted it from such liability from the get-go—and that the VOAP agreement could not have settled (and did not settle) any liability that was non-existent from the get-go, meaning that the VOAP agreement did not effect an administrative settlement with respect to any liability of Plaintiff as concerns Arrow Lake.[5]

The problem, though, is that there is simply no basis for treating the prospect of some liability for Plaintiff for the pollution of Arrow Lake as entirely out of the question at the time the VOAP agreement was entered into, such that the VOAP agreement cannot be treated as having settled any such potential liability for Plaintiff. Part of why this is the case is that—contrary to Plaintiff's misrepresentation on this point—42 U.S.C. § 9607(b)(3) provides not an *exemption from* liability, but rather a *defense to* liability (one sometimes called the "innocent-party," or "third-party," or "innocent landowner" defense). *See*, *e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 60 n.7 (1998) (referring to the "third-party defense under § 107(b)(3) of CERCLA, 42 U.S.C. §

---

[5] Specifically, Plaintiff asserts that the Court overlooked the fact that, absent a contractual relationship or demonstrated lack of due care, CERCLA expressly exempts property owners from liability for releases occurring on their property caused by third parties, and thus there was no potential CERCLA liability for SLLI to "settle" in the VOAP agreement or otherwise with respect to ACC's releases of hazardous substances into Arrow Lake." (Doc. No. 148 at 9).

9607(b)(3)"); *United States v. Twp. of Brighton*, 153 F.3d 307, 315 n.8 (6th Cir. 1998) ("[I]t is a defense to liability to establish that the act *or omission* of a third party caused the harm." (citing 42 U.S.C. § 9607(b)(3))); *City of Toledo v. Beazer Materials & Servs., Inc.*, 923 F. Supp. 1013, 1024 (N.D. Ohio 1996) (referring to "the affirmative defense to liability provided by 42 U.S.C. § 9607(b)(3)"). If and when a defendant in litigation ever raises the issue, "[t]o establish its 'innocent landowner' defense, the defendant . . . has the burden by a preponderance of the evidence, of proving several elements of § 9607(b)(3) . . . ." *Id*. at 1019. So what the existence of 42 U.S.C. § 9607(b)(3) means is that a landowner may attempt to establish this affirmative defense if and when it sees fit to do so, but that the success of such an attempt is not automatic but rather requires the landowner to meet its burden of proof during the course of the litigation. What the existence of 42 U.S.C. § 9607(b)(3) *never* means is that the absence of liability for the landowner is assured on the front end. And what it certainly does not mean here is that Plaintiff's absence of liability for the pollution of Arrow Lake was assured at the time of its entering into the VOAP agreement such that there was no such liability (not even *potential* liability) and that therefore the VOAP agreement could not have settled it. So the existence of 42 U.S.C. § 9607(b)(3) does not change the fact that as the Court explained in its Opinion, the VOAP agreement effected an administrative settlement of Plaintiff's CERCLA liability, if any, with respect to pollution on its property including Arrow Lake.

As part of this second argument, Plaintiff points to various things that in its view establish that the VOAP agreement did not effect an administrative settlement. Plaintiff is entitled to its opinion, but it is not entitled to a second opinion from this Court—not least because it simply has not undertaken to break down the Court's analysis to show where the Court erred why any such purported error was clear. It is one thing for a party to explain why supposedly it is right; it is

another to explain why the court was wrong, and it is still another to explain why a court was *dead wrong*. The Court does not see where Plaintiff has done the second of these, let alone the third. Among other things, Plaintiff does not explain why the Court was wrong to find that two major relevant factors "indicate[d] very strongly that the PRP [Plaintiff] had an 'administration [sic] settlement,'"[6] and to thus conclude that Plaintiff did in fact have an administrative settlement. (Doc. No. 141 at 23). Accord *id.* at 23 (noting that "the language in the VOAP agreement states in Section VIII that the VOAP agreement 'constitutes an approved administrative settlement pursuant to 42 U.S.C. § 9613(f) and resolves [Plaintiff's] liability, if any whatsoever, to the State of Tennessee as of the date of [the VOAP agreement] under the Comprehensive Response, Compensation and Liability Act ("CERCLA") and its amendments, 42 U.S.C. § 9601 *et seq*.'"). And Plaintiff certainly does not explain how the Court persuasively can be accused of *clear* error in finding that the VOAP agreement constituted an administrative settlement, when "the VOAP agreement expressly used the term 'administrative settlement,' and indeed identified it[self] as an administrative settlement specifically for purposes of CERCLA liability." (Doc. No. 141 at 24). The Court adheres to its prior decision on this issue for the reasons explained in its Opinion, and it notes that the relevant portion of ACC's response in opposition to the Motion for Reconsideration (Doc. No. 154 at 15-21) adds further fodder for rebuffing Plaintiff's claim of clear error.

Plaintiff next argues:

[T]he Court also overlooked Supreme Court precedent holding that parties like SLLI, who *voluntarily* incur costs in response to releases of hazardous substances— as opposed to those who incur or reimburse such costs under a binding CERCLA settlement or judgment—*must* bring a CERCLA Section 107 cost-recovery claim (as SLLI did). That was the only claim available to SLLI because it has never met the requirements to bring a CERCLA Section 113 contribution claim against ACC.

(Doc. No. 148 at 9-10). Plaintiff then fleshes out this argument somewhat as follows:

_____

[6] There was a scrivener's error here, and the word obviously intended by the Court was "administrative."

In *United States v. Atlantic Research Corp.*, 551 U.S. 128 (2007), the Supreme Court clarified the language in CERCLA Section 107(a)(4)(B) ("any other necessary costs of response incurred by any other person"), stating that the language allows parties, even PRPs, to file Section 107 cost-recovery claims against other liable parties. *Id*. at 135-36. However, in order to (1) reconcile a potential conflict between a Section 107 cost-recovery claim (with its strict, joint and several liability standard and 6-year statute of limitations) with a Section 113 contribution claim between PRPs (with its equitable standard and three-year statute of limitations), and (2) limit PRPs who would always choose the former if possible, the Supreme Court ruled that parties that *voluntarily* incur response costs must recover them in a cost-recovery action under Section 107, whereas parties that incur or reimburse costs under a binding legal judgment or CERCLA settlement must recover them in a contribution action under Section 113. *Id*. at 139-4.

. . .

Because the response costs SLLI has incurred to assess the contamination in Arrow Lake and the surrounding area caused by ACC's pollution and develop potential remedies were *voluntary* response costs, SLLI properly filed a Section 107 cost-recovery claim against ACC to recover those costs. In fact, under *Atlantic Research*, no other claim was available. For that reason, the Court erred when it dismissed SLLI's cost-recovery claim.

*Id.* at 17. Consistent with this language, Plaintiff emphasizes that its claim for cost-recovery "was narrowly crafted not to seek costs SLLI has incurred implementing the VOAP agreement, but rather to seek only those response costs caused by the release of hazardous substances from ACC's Landfill." (Doc. No. 116 at 37) (internal quotation marks omitted). *See also id.* at 38. ("[T]he response costs SLLI seeks from ACC were not incurred as part of SLLI's VOAP [a]greement with TDEC").

The problem for Plaintiff is that *Atlantic Research Corp.* (which Plaintiff did not even cite in its Opposition to ACC's MSJ) actually does not speak to whether a plaintiff that has incurred *both* voluntary costs of remediation *and* costs implementing an administrative settlement (such as the settlement in the VOAP agreement) can bring a cost-recovery action for the former kind of costs even if it is relegated to bringing a contribution action for the latter kind of costs. The Court understands why that question *could be* answered in the affirmative. But in its Opposition to ACC's

MSJ, as support for such an answer, Plaintiff cited no binding authority whatsoever, and instead cited only a single (non-precedential) case, *2121 Abbott Martin Partners, LLC v. Lee*, No. 3:18-cv-00683, 2019 WL 3818870 (M.D. Tenn. Aug. 14, 2019). As Plaintiff notes, that case involved a CERCLA § 107 claim and a TDEC VOAP agreement, and another district judge of this Court held that a § 107 claim could be brought for plaintiff's response costs "that were not incurred as part of their settlement with TDEC." *Id.* at *3. But as that case is not binding authority, the undersigned unquestionably did not commit clear error merely by not following it. Moreover, even the party in that case that urged the Court to hold as it did—i.e., the plaintiffs—conceded in its pertinent brief that the Sixth Circuit had not so held in its most relevant case (i.e., *Hobart*). *See* 2019 WL 10506453 (M.D. Tenn. Jan. 31, 2019) ("Neither in *Hobart* nor in [*Tennessee v. Roane Holdings, Ltd.*, 835 F. Supp. 2d 527, 542 (E.D. Tenn. 2001)] did the court address the specific question presented here: whether a party may seek contribution for costs incurred pursuant to an administrative settlement and at the same time seek cost recovery for other expenses that were not incurred pursuant to an administrative settlement.").[7] And the plaintiffs also expressly conceded that this question in effect was subject to legitimate debate. *See id.* ("Although a split of authority may exist on this issue, the better reasoned decisions support Plaintiffs' position: a PRP with contribution claims under Section 113 for costs incurred pursuant to an administrative settlement is not barred from pursuing a separate claim under Section 107 to recover costs that it incurred prior to and not as a result of the administrative settlement or court judgment.").

And there is no question that the actual language of the holdings of multiple appellate decisions is framed in terms of a plaintiff being prohibited from bringing both kinds of actions,

---

[7] The Westlaw citation here is to the plaintiffs' brief in response to the defendants' motion for partial judgment on the pleadings in that case; the Westlaw document does not reflect any page numbers for use in pinpoint citations.

*period*, and not a plaintiff being prohibited only from bringing both kinds of actions *for the same kind of costs*. This is true of *Hobart* in particular: "a PRP [that] has entered into an administrative settlement with the government, thereby having met a statutory trigger for filing a contribution action, can bring only a § 113(f)(3)(B) action for contribution—not a § 107(a)(4)(B) cost-recovery action." 758 F.3d at 768. *See also Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 705 (3d Cir. 2019) ("[I]f a polluter is immune from contribution claims, it cannot bring cost-recovery claims. Instead, it can bring only contribution claims." (citing *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 229 (3d Cir. 2010))); *id.* at 706 ("[A] polluter who has contribution-claim immunity under § 9613(f)(2) cannot bring a cost-recovery claim. Instead, it can bring only a contribution claim." (citation omitted)); *Morrison Enterprises, LLC v. Dravo Corp.*, 638 F.3d 594, 603–04 (8th Cir. 2011) (holding that "§ 113(f) provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under §§ 106 or 107" and reaffirming that the proposition that a liable party cannot bring an action under § 107 "remains viable for those parties which still have recourse to relief under § 113" (internal quotation marks omitted)). And as for the Third Circuit's rationale for the rule it was articulating in *Cranbury Brick Yard* (as first announced in *Agere Sys.*), it sounds to the undersigned like a rationale for why *any* cost-recovery claim was prohibited for a party that had immunity from contribution claims (even if the immunity was only for *some* cleanup costs).

So in summary, the Court acknowledges that binding precedent (which would be very welcome on this point) potentially could establish some day that the undersigned's ruling on this issue in its Opinion was erroneous, but it is readily apparent that the Court's ruling was not *clearly* erroneous. Indeed, it is not yet clear that the Court's ruling was erroneous at all, as opposed to merely debatable.

Finally, Plaintiff argues that "because the Court found the VOAP agreement 'poorly drafted' and unclear as to its impact on SLLI's CERCLA rights, such finding created a genuine issue of material fact that required the denial of summary judgment." (Doc. No. 148 at 10). In support of this argument, Plaintiff included the following footnote:

> ACC first sought dismissal of SLLI's CERCLA claim based on ACC's interpretation of the VOAP agreement in its 2012 Motion to Dismiss [in the Prior Case]. SLLI disputed ACC's interpretation. Rejecting ACC's argument, Judge Trauger noted that the "dispute plainly demonstrates that the scope of remedial activities covered by the [VOAP agreement] is a fact the accuracy of which can reasonably be questioned and thus is not a proper subject for judicial notice." (Prior Case Doc. No. 34 at 22.)

(Doc. No. 148 at 18 n.7).

Otherwise, Plaintiff's entire argument on this point was as follows:

> The Court expressly found that the language in the VOAP agreement was unclear as to whether it was sufficient to resolve SLLI's CERCLA liability and give rise to a Section 113 contribution claim:

>> The Court concedes that there is certainly language in the VOAP agreement that might suggest that resolution of Plaintiff's liability actually was conditioned on Plaintiff's performance under the agreement…. This certainly tends to muddy the waters somewhat as to whether the VOAP agreement effected an administrative settlement. The Court deems it fair to say that the VOAP agreement was poorly drafted in this regard….

> (Doc. No. 141 at 23, n.28.) As discussed above, the express language of the VOAP agreement provides that SLLI only gets a release of liability *after* TDEC issues a no further action letter which it has not yet done. Because the Court found the VOAP agreement was not sufficiently clear to meet the standard in *Hobart*, genuine issues of material fact exist and summary judgment was not warranted.

(Doc. No. 148 at 18). There are several problems with Plaintiff's position here. First, unlike Judge Trauger then, the undersigned in this case was not called upon to decide whether the scope of remedial activities covered is a proper subject for judicial notice—let alone for judicial notice on a *motion to dismiss*. So Judge Trauger's statement is not applicable to the question here, which

is whether on a motion for summary judgment the Court properly found a lack of a genuine issue of material fact as to the effect and nature of the VOAP agreement (i.e., that the VOAP agreement effected an "administrative settlement"). And Plaintiff's analysis on that point is lacking; it is not enough to imply that the question must be answered in the negative merely because the assigned judge notes that there is some language in the agreement that "muddies the water somewhat" or (to speak less metaphorically and more precisely) supports the non-movant's construction.

Tennessee courts often state without qualification that "[t]he interpretation of written agreements . . . is a matter of law." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). *See also Fisher v. Revell*, 343 S.W.3d 776, 779 (Tenn. Ct. App. 2009) ("The interpretation of a written contract is a matter of law and not of fact."). But the reality is more complicated (and more favorable to Plaintiff's argument, albeit ultimately to no avail on the instant Motion). The interpretation of a written contract is question of law only if the contract is unambiguous; if instead it is ambiguous, then its construction becomes a question of fact. *See Dog House Invs., LLC v. Teal Properties, Inc*., 448 S.W.3d 905, 913 (Tenn. Ct. App. 2014)

However, "*[w]hether* a contract is ambiguous or unambiguous is a question of law . . . ." *Murphy v. Gilless*, No. 02A01-9305-CV-00114, 1994 WL 652571, at *2 (Tenn. Ct. App. Nov. 21, 1994) (emphasis added).[8] So if the question of whether the VOAP *unambiguously* effected an

---

[8] The Sixth Circuit has explained:

> In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state supreme court. If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data. *See id.* "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state] Supreme Court would decide otherwise." *Kingsley Assoc. v. Moll PlastiCrafters, Inc.,* 65 F.3d 498, 507 (6th Cir.1995).

administrative settlement is correctly answered in the affirmative, then the VOAP's construction

in this regard does not present any issues (let alone genuine issues) of fact that could preclude

summary judgment. And Plaintiff does not present any arguments as to why the Court erred in

finding the VOAP agreement unambiguous in this regard.[9] Among other things, Plaintiff does not

explain why a contract must be deemed ambiguous on a topic merely because it contains *some*

language that "muddies the water somewhat" on that topic or otherwise cuts somewhat against the

contrary construction on that topic that the court ultimately accepts and finds unambiguous;[10]

Plaintiff does not explain, for example, why the existence of such language necessarily renders the

contract ambiguous (as ambiguity is defined under Tennessee law) on that topic, even if the court

has no doubt as to the correct construction on that topic despite the existence of such language.

Nor does Plaintiff explain here why, if the Court indeed is correct that the VOAP agreement is

unambiguous as to whether it effects an "administrative settlement," the Court erred in ruling that

the VOAP agreement (unambiguously) *does* effect an administrative settlement.[11] So Plaintiff here

fails to demonstrate any error, let alone clear error. Ultimately, the Court adheres to its

---

*Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citation and footnote omitted). Herein, when the Court cites a decision of the Tennessee Court of Appeals, it does so with confidence that the State Supreme Court today would not decide differently with respect to the cited proposition(s).

[9] In its Opinion, the Court at least suggested (albeit admittedly without ideal clarity) that it was deeming VOAP "unambiguous[ ]" on the topic at issue. (Doc. No. 141 at 23 n.28 (referring to the "resolution unambiguously announced in Section VIII" of the VOAP)).

[10] The Court understands the argument for why such a contract must be deemed ambiguous, but it is also aware of reasons (which are not necessarily often expressed in the case law) why that is not necessarily the case. *Neece v. A.A.A. Realty* Co., 322 S.W.2d 597, 608 (Tex. 1959) (Calvert, J., dissenting) (criticizing the idea of finding a "contract ambiguous because upon looking at it one would have some doubt of its meaning" and of "hold[ing] ambiguous all contracts which contain suggested repugnancies and seeming contradictions").

[11] As noted above, Plaintiff does argue *elsewhere* against the Court's conclusion that the VOAP effected an administrative settlement, but the Court finds those arguments unpersuasive.

determination—explained in some detail in footnote 28 of its Opinion—that it appropriately could decide as a matter of law whether the VOAP agreement was an administrative settlement, and also to its determination (explained in the same footnote and elsewhere in its Opinion) that this question should be answered in the affirmative.

Plaintiff next argues that the Court's dismissal of its CERCLA cost-recovery claim is a manifest injustice. The Court does not begrudge Plaintiff feeling this way. But Plaintiff does not adequately explain the manifest-injustice standard on which it relies here. Not does Plaintiff explain why—assuming arguendo that the Court is correct in rejecting Plaintiff's other bases for reconsideration of such dismissal such that the issue of manifest injustice would have to be reached—[12]the dismissal is a manifest injustice. After all, if Plaintiff's other arguments for reconsideration have properly been rejected, that means that it is not clear that the Court erred under the law in ordering such dismissal. And if it is not clear that a result is legally wrong, a court cannot easily form the form opinion that the result was manifestly unjust; if a result may be correct under the law, it may represent the proper outcome under our system of justice, which hardly could be said to constitute a manifest injustice.

III.    *The Court's alleged error in granting ACC summary judgment on Plaintiff's 2012 nuisance claim.*

Finally, Plaintiff claims that the Court erred in granting ACC summary judgment on Plaintiff's first nuisance claim on the grounds that the applicable limitations period (undisputedly

---

[12] If instead the Court were incorrect to reject Plaintiff's other bases (i.e., alleged clear error of various kinds) for denying reconsideration of its dismissal of Plaintiff's CERCLA cost-recovery claim, then Plaintiff need not rely on "manifest injustice"—and certainly would not need to bootstrap the clear error(s) into a separate claim theory of manifest injustice based on such clear error. For these reasons, the Court does not consider its alleged clear errors as relevant to whether its dismissal was a manifest injustice.

three years from to time the claim accrued, pursuant to Tenn. Code Ann. § 28-3-105(1)) expired prior to Plaintiff filing this claim in the Prior Case on January 19, 2012.[13]

In granting ACC summary judgment on this basis, the Court ruled that under the "discovery" accrual rule generally applicable under Tennessee law, it was clear (and not actually disputed by Plaintiff) that accrual occurred more than three years prior to January 19, 2019. (Doc. No. 141 at 31-32). The Court then addressed Plaintiff's assertion that the time-bar that otherwise would apply here (under Tenn. Code Ann. § 28-3-105(1) and the "discovery" accrual rule) is inapplicable when—as in the present case, according to Plaintiff—"the nuisance is temporary and continuous in nature, in which case the statute of limitations will not bar a recovery even where the nuisance has existed longer than three years." (Doc. No. 116 at 43 (citing Tenn. Code Ann. § 28-3-105 and *Kind v. Johnson City*, 478 S.W.2d 63 (Tenn. Ct. App. 1970))). Accepting the just-quoted proposition as true, the Court then turned to whether the nuisance alleged in the first nuisance claim was (as alleged by Plaintiff) indeed temporary and continuous, or instead was permanent. (Doc. No. 141 at 32).

So doing, the Court noted that this question could be answered by application of either of two irreconcilable lines of Tennessee cases from which the Court had to choose. As the Court explained:

> The two lines of cases tell the court to focus on—and indeed make dispositive—an inquiry into very different things. To put the problem concisely, the second line of cases tells the court to focus on the extent to which the defendant acted in an inexcusably negligent manner, and the first line of cases tells the court to focus on entirely other things. Accordingly, the Court feels compelled to choose between the two lines of cases.

---

[13] Plaintiff filed a second nuisance claim in the above-captioned (2018) action. The Court denied ACC summary judgment on the second nuisance claim. (Doc. No. 141 at 38-39).

(Doc. No. 141 at 33-34). The Court determined that it should eschew the second line of cases and instead follow the first line of cases because, for reasons the Court explained, it believed that the Tennessee Supreme Court would do likewise. (*Id.* at 34-37). As the Court noted, under the first line of cases:

> A temporary nuisance is one that "can be corrected by the expenditure of labor or money" and the damages to the property "are recurrent and may be recovered from time to time until the nuisance is abated." "A permanent nuisance is one that is 'presumed to continue indefinitely, and is at once productive of all the damage which can ever result from it . . . .'"

(Doc. No. 141 at 33 (quoting *Whitford v. Vill. Groomer & Animal Inn, Inc.*, No. M202000946COAR3CV, 2021 WL 4240989, at *3 (Tenn. Ct. App. Sept. 17, 2021))) (internal citations omitted). *See also id.* at 37 ("To reiterate, under the first line of cases, '[w]here an activity or business operation creating the nuisance is of such a character that it will be presumed to continue indefinitely, and is at once productive of all the damage which can ever result from it, the nuisance is permanent, and the statute of limitations begins to run against the plaintiff's cause of action from the time of the complete creation of the nuisance.'" (quoting *Caldwell v. Knox Concrete Prod., Inc.*, 391 S.W.2d 5, 11 (Tenn. Ct. App. 1964))). The Court then found that the nuisance alleged in Plaintiff's first nuisance claim was permanent and that as a result that claim was time-barred.

> [T]he amended complaint is clear that it is *the presence of waste at the Landfill*— and not any particular "activities" of ACC at the Landfill post-closure— that is what is "annoying and disturbing" Plaintiff as a neighboring landowner. In the Court's view, the presence of waste at the Landfill—the applicable nuisance— is indeed of "such a character that it will be presumed to continue indefinitely." And the presence of the waste also is "at once productive of all the damage which can ever result from it" because once all of the waste was present in the Landfill (as it was at the time of the Landfill's closure in 1995), it was able to produce all of the damage (to Plaintiff's Property in particular) that ever could result from it; any remedial removal of waste could *diminish* such damage, but once in place, the waste was in position to do all the damage it could do without the need for ACC or another else to do anything else whatsoever to increase the damage.

In short, the nuisance underlying the nuisance claim alleged originally in the Prior Case was permanent. Accordingly, the general accrual rules apply normally—without any exception being made on the grounds that the nuisance actually was temporary—and this claim is time-barred.

(*Id.* at 37-38).

Asserting that the Court erred here, Plaintiff writes:

Whether a nuisance is temporary or permanent is generally a question of fact that is properly determined at trial. *See Anderson v. Am. Limestone Co., Inc.*, 168 S.W.3d 757, 761 (Tenn. Ct. App. 2004). And while a grant of summary judgment may be appropriate where the undisputed facts support only one conclusion, this is not such a case.

(Doc. No. 148 at 19) (internal quotation marks and one citation omitted). Despite seemingly

opining that this is *not* a case where the undisputed facts support only one conclusion, Plaintiff

then turns around and asserts in essence that this *is* a case where undisputed facts support only one

conclusion (namely, the conclusion that is diametrically opposed to the Court's conclusion):[14] that

the nuisance was temporary (and continuing) rather than permanent. (Doc. No. 148 at 19). The

"fundamental reason"[15] supporting this conclusion, according to Plaintiff, is that the nuisance "can

be corrected by the expenditure of labor and money." (*Id.*) (quoting *Whitford*, 2021 WL 4240989

at *3). But the Court explained why it would be inappropriate to conclude that this reason dictated

that the nuisance was temporary:

In one case, the Tennessee Court of Appeals noted, with good reason, that the definitions reflected in the first line of cases "are not entirely satisfactory." *KMI Grp., Inc. v. Wade Acres, LLC*, No. W201800301COAR3CV, 2019 WL 1504034,

---

[14] What Plaintiff does *not* do here is assert that there are disputed facts that should have prevented the Court from deciding as a matter of law at the summary judgment stage whether the nuisance was temporary or permanent. Thus, the Court need not assess any such assertion. Instead, the question is whether the Court's legal conclusion from the facts (which, to reiterate, are not asserted by Plaintiff to have been insufficient for the Court to make a conclusion) was clearly erroneous.

[15] To Plaintiff's credit, the reason it asserts here is derived (appropriately) from the first line of cases, which the Court has embraced—and not from the second line of cases, which the Court is disregarding for the reasons set forth herein.

at *4 (Tenn. Ct. App. Apr. 5, 2019). The problem with such definitions is [in pertinent part] that "with enough money and labor, nearly anything is possible" . . . .

(Doc. No. 141 at 33-34 n. 34). Moreover, Plaintiff focuses exclusively on why the facts (supposedly) show conclusively that the nuisance was temporary; beyond its implication that the Court must be wrong because Plaintiff (supposedly) is right, Plaintiff does not address what is wrong with the Court's determination (Doc. No. 141 at 37-38), that—given how "permanent nuisance" is defined in the first line of cases—the facts conclusively establish that the nuisance at issue fits within the definition of permanent nuisance. Thus, Plaintiff has not shown how (or that) the Court committed any error, let alone clear error, in determining as a matter of law that under the undisputed facts the nuisance here was permanent such that Plaintiff cannot avoid the otherwise applicable time-bar.

<u>CONCLUSION</u>

In support of its Motion for Reconsideration, Plaintiff sets forth a variety of arguments attacking parts of this Court's Opinion (Doc. No. 141) and Order (Doc. No. 142). Plaintiff is free to assert these arguments on appeal if and when there is an appeal of the Opinion and Order. But Plaintiff has not shown that the applicable standard for reconsideration has been satisfied. In particular, even assuming arguendo that one or more of the challenged parts of the Opinion and order are erroneous, Plaintiff has not shown that any of them are clearly erroneous or foist a manifest injustice upon Plaintiff.

Accordingly, the Motion for Reconsideration (Doc. No. 147) will be DENIED.

An appropriate corresponding order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE